MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS v.
JOHN A. MOTT.

No. 1331.   Decided June 13, 1904.

**Railway—Nuisance—Stock Pens.**

The conveyance to a railway company of depot grounds in a town, with right to the transaction thereon of all business connected with or incident to said railway, did not relieve the company from liability for depreciation of the value of residence property in the vicinity by a nuisance incident to the proper construction and operation subsequently of stock pens for loading cattle on its cars upon the premises so granted, though the owner held by purchase ,from the same grantor subsequent to the conveyance to the railway.   (Pp. 98, 99.)

Question certified from the Court of Civil Appeals for the Third District, in an appeal from Hays County.

*Fiset, Miller & McClendon,* for appellant.—The court erred in overruling defendant's general demurrer to plaintiff's original petition, because the damages sought to be recovered are only such damages as would be recoverable by reason of a permanent nuisance, and it does not appear from the petition that the stock pens complained of were such a nuisance. Baugh v. Texas & N. O. Ry. Co., 80 Texas, 57; City of San Antonio v. Mackey, 36 S. W. Rep., 70, 14 Texas Civ. App., 210; Shively v. Cedar Rapids Ry. Co., 74 Iowa, 169, 7 Am. St. Rep., 471; Lurssen v. Lloyd, 76 Md., 30; Watts v. Norfolk R. R. Co., 23 Law. Rep. Ann., 674; Steinke v. Bentley, 34 N. E. Rep., 98; Brewing Co. v. Compton, 32 N. E. Rep., 694; Cheshire Turnpike Co. v. Stephens, 13 N. H., 28; Street Ry. Co. v. Limburger, 88 Texas, 87.

The court erred in its charge in submitting to the jury the question as to whether plaintiff was entitled to recover damages on account of the pens in question, because under the uncontroverted testimony the owners of the property in question, when defendant acquired its right of way, donated such right of way to it under a contract that such right of way might be used for all proper railroad purposes, and said contract and deed was duly acknowledged and recorded, and plaintiff acquired his title to the property in question from such owners with knowledge of such donation and contract, and was bound thereby, and was estopped from objecting to the use of the right of way for the stock pens in question so long as the pens were used with ordinary care, and the uncontroverted testimony was that the pens in question were so used.   Recitals in deeds are binding upon all persons claiming under them.   Gonzales v. Batts, 20 Texas Civ. App., 421; Fisk v. Flores, 43 Texas, 340.   Defendant had the right to use its right of way for any necessary railroad purpose without being liable for damages.   Louisville & N. R. R. Co. v. French, 43 S. W. Rep., 771; San Antonio & A. P. Ry. Co. v. Longorio, 25 S. W. Rep., 1020; Houston & E. T. Ry. Co. v. Adams, 58 Texas, 476; H. & T. C. Ry. Co. v. McKinney, 55 Texas, 176; Galveston H. & S. A. Ry. Co. v. Pfeuffer, 56 Texas, 75.

The granting clause of the deed to the railroad company for the right of way conveyed and released not only the right to construct, maintain and operate tracks, switches, turn tables and depot grounds, but also the right to transact "all business connected with said railroad or incident thereto." Since the maintenance of stock pens is business connected with the railroad, the deed gave the right to maintain such pens if it is possible to give such right. In Calcasieu Lumber Co. v. Harris, 77 Texas, 23, it is said that a deed to a railroad company for right of way carries the right to use the land for all proper railroad purposes. In Faires v. San Antonio & A. P. Ry. Co., 80 Texas, 43, it is held that a deed to a railroad company for right of way discharges all demands for damages resulting from the construction of the road. The reason for this holding is stated to be that the deed was made with the knowledge of the purpose for which the land was intended to be used. To the same effect is Houston & E. T. Ry. Co. v. Adams, 58 Texas, 482. In Gulf C. & S. F. Ry. Co. v. Richards, 11 Texas Civ. App., 95, it is held that the owner of land conveyed to the railroad company for right of way is presumed to have included in the consideration of the deed all damages he might probably suffer from the use of the land for railroad purposes. See also Olive v. Sabine & E. T. Ry. Co., 11 Texas Civ. App., 208. In Houston & T. C. Ry. Co. v. McKinney, 55 Texas, 192, it is held that the owner of land so conveyed waives all damages not reserved in the deed. And in Sellers v. Railway Co., 81 Texas, 459, it is held that implied reservations in deeds should not be encouraged but that the written contract should speak for itself. In San Antonio & A. P. Ry. Co. v. Faires, 80 Texas, 43, where damages were sought on account of an additional side track being constructed on the right of way previously granted by the adjoining owner, the court held that the plaintiff could not recover. The use by the company of its right of way for stock pens was a reasonable use for the business purposes of the railroad company, and hence, even though some damage was thereby caused to the plaintiff, he can not recover. Gulf C. & S. F. Ry. Co. v. Oakes, 94 Texas, 155.

*Will G. Barber,* for appellee.—Where the pleading and evidence shows that stock pens are erected and maintained of a permanent character or nature, as in this case, they constitute a permanent nuisance, and the measure of plaintiff's damage is the depreciation in the market value of his property. Missouri K. & T. Ry. Co. v. McGehee, 75 S. W. Rep., 841; Denison & P. S. Ry. Co. v. O'Malley, 45 S. W. Rep., 227; Daniel v. Ft. W. & R. G. Ry. Co., 69 S. W. Rep., 198; City of Paris v. Allred, 17 Texas Civ. App., 125.

Although the business is lawful and conducted with all due care and inflicting as little injury as possible, yet if same appreciably and substantially injures the neighbor's property it is an actionable nuisance. Susquehanna Co. v. Sprangler (Md.), 63 Am. St. Rep., 533; Ducktown

Co. v. Barnes (Tenn.), 60 S. W. Rep., 593; Pennoyer v. Allen, 56 Wis., 502.

If appellant's contention is true it could place upon this right of way adjoining these residences machine shops, car factories, railroad hospitals, coal bins and chutes, plants for chemically treating its ties, and any other plant or structure which might appertain to the railroad business, although in so doing it absolutely destroyed adjoining property. The presumption should be against any contract or grant authorizing the maintenance of a nuisance. If our contention as made above is correct, then no harm could have come to appellant from the charge complained of. Railway Co. v. Bruiton (Ky.), 58 S. W. Rep., 604; Fogarty v. Junction Brick Co. (Kan.), 18 Law. Rep. Ann., 756; Willis v. Kentucky Co. (Ky.), 46 S. W. Rep., 488; Bacon v. Boston (Mass.), 28 N. E. Rep., 9; Jungblum v. Minn. Ry. Co. (Minn.), 72 N. W. Rep., 971; Taylor B. & H. Ry. Co. v. Robson, 24 S. W. Rep., 37; Missouri K. & T. Ry. Co. v. McGehee, 75 S. W. Rep., 841; Mayor, etc., v. Railway Co., 26 Pa., 355 (2 Casey); Garvey v. Long I. Ry. Co., 41 N. Y. Supp., 397. See case of Railway Co. v. Calkins, 9 Texas Ct. Rep., 791, in which a similar question is decided and in which a writ of error was refused by this court; also case of Railway Co. v. Anderson, decided by Court of Civil Appeals at Austin on May 18, 1904, 10 Texas Ct. Rep., 226, and authorities therein cited. Authorities are cited in this opinion clearly in support of appellees' contention. See also case of Stevens v. N. Y. O. & W. Ry. Co., 175 N. Y., 72, and Manufacturing Co. v. C. & W. M. Ry. Co., 64 Mich., 115.

BROWN, Associate Justice.—This is a certified question from the Court of Civil Appeals of the Third District. The statement and question are as follows:

"This is a suit to recover damages for decrease in the market value of certain town lots. The plaintiff recovered a judgment and the defendant has appealed.

"The plaintiff's suit is predicated upon the allegations in his petition to the effect that he is the owner of the lots in controversy, located in what is known as the 'Katy' addition to the town of San Marcos; said lots being situated just across a street and near by defendant's right of way, upon which right of way, the petition alleges, the defendant has without his consent wrongfully constructed its stock pens, for the purpose of handling and shipping live stock. The petition alleges that at the time and before the stock pens were erected there was and still is situated upon the plaintiff's lots a dwelling-house and other improvements necessary and convenient for the use of said lots as a place of residence. The petition does not charge the defendant with negligence in the construction and operation of the stock pens, but does charge that defendant has been and is using same to ship live stock, and charges that 'defendant will continue to so use same perpetually hereafter; that in the operation of such pens large numbers of such stock have been and

will hereafter, from time to time, be confined therein; that in such operation also large numbers of men, boys and other persons usually and ordinarily gather around and about such pens; that the gathering of such persons about such pens is one of the usual, ordinary and unavoidable results of the building and operating of such pens; that the confining of such stock in such pens causes large amounts of refuse and filth to accumulate in and about same, producing disagreeable and offensive odors, which spread over and upon plaintiff's said lots; that since the building of said pens stock have from time to time died therein and thereabout and will continue to do so, and thereby disagreeable and offensive odors are and will be produced and unsightly carcasses exposed to the view of the inhabitants of said residence; that in the operation of said pens there has been and will continue to be much loud noise occasioned by the loading and unloading of such stock, and the congregating of such persons, and loud, obscene and offensive language has been and will be from time to time continuously hereafter used by those engaged in the loading and unloading of such stock, and that all these conditions and results defendant knew would result when it constructed said pens. That said pens and the results occurring therefrom, as herein alleged, are and will be permanent and the injurious results complained of are and will be permanent.

" 'That by reason of the facts, conditions and results hereinbefore alleged, said stock pens constitute and are a nuisance; and that by reason of the proximity of plaintiff's said lots thereto, they were and are now depreciated in their reasonable market value in the sum of $500, and thereby plaintiff was and is damaged by the said acts of defendant in the sum of $500.'

"The undisputed testimony shows that in April, 1894, W. D. Wood and certain other citizens of the town of San Marcos entered into a contract with the defendant company, by which, in consideration of the supposed advantage to result from the extension of defendant's railroad from its terminus at that time east of the San Marcos River westerly to a point designated in the contract within the city or town of San Marcos, they agreed to furnish the defendant a right of way and depot grounds from the west bank of the San Marcos River to the point designated as aforesaid. In pursuance of that agreement, the citizens referred to purchased from J. G. Storey and wife and Mrs. Pearl Flowers and husband a tract of land, which included the land desired by the railroad for its right of way. As a matter of convenience the deed to the entire tract was, by agreement, made to W. D. Wood. Thereafter W. D. Wood conveyed to the defendant the right of way referred to, which is indicated by the following plat, which was referred to and made a part of the deed conveying the right of way. [The map is omitted as unnecessary to answer this question.] At that time the remainder of the property not conveyed to the railroad company had been subdivided into blocks, lots and streets as indicated by the plat. The stock pens as now marked on the plat were not on it at that time,

and are now placed on it to show their relation to the plaintiff's property, which is lots 8 and 9 in block 4, as shown on the sketch.

"The testimony does not show whether or not the defendant company had any stock pens at or near San Marcos at the time it acquired the right of way referred to, but does show that the stock pens were not on said right of way at the time the plaintiff purchased his property but were put there afterwards, and at and prior to that time were located at another place on the other side of the San Marcos River, outside of the city limits. It was also shown that defendant's right of way extended beyond the western limits of the town and that the stock pens complained of could have been located at a place where they would not have been near any residence, and that the plaintiff, at the time they were located, called the defendant's attention to that fact and protested against them being located where they now are.

"The deed from W. D. Wood to defendant company is dated May 4, 1894, and recites as a consideration 'the advantage to the city of San Marcos in said county of Hays, by constructing the Missouri, Kansas & Texas Railway of Texas into said city, and erecting and maintaining freight and passenger depots in said city by said railway company; and the further consideration of the payment of $1 to said Wood by said company.' And the granting clause reads as follows: 'Have granted, bargained, sold and conveyed, and do by these presents bargain, sell, grant and release to said Missouri, Kansas & Texas Railway Company of Texas the right to build, construct, maintain and operate their railroad track or tracks and switches, turntables and depot grounds, and for the transaction of all business connected with said railway or incident thereto; subject only to the limitation of a contract entered into by said railway company and some citizens of said city of San Marcos, the following described tract of land.' The deed then proceeds to describe the right of way, as shown on the plat herein set out, from the San Marcos River to the defendant's depot on Austin street. The deed then refers to and makes the plat set out (which had been duly recorded in Hays County) a part of the deed. It also contains the following language: 'To have and to hold said described right of way, unto the said Missouri, Kansas & Texas Railway Company of Texas, its successors or assigns, with all the right thereto belonging forever.'

"The contract referred to in the deed is not set out in full in the statements of facts, but it is shown that it was signed by W. D. Wood and various other citizens of San Marcos and the defendant railway company through its duly authorized agents; and it is stated in the statement of facts that it contained a number of conditions to be carried out by the railroad company, and that the defendant company had fully complied with the conditions referred to.

"On January 19, 1895, W. D. Wood, in pursuance of an agreement among the parties, conveyed the remainder of the land conveyed to him by J. G. Storey and wife and Mrs. Flowers and husband to the persons who had furnished the fund to purchase the same, said deed in

effect constituting a partition, and by the terms thereof lots 8 and 9 in block 4 were conveyed to E. Northcraft. The deed referred to recites the fact that the grantees therein, who were the citizens who signed the contract with the defendant company above referred to 'for the purpose of granting and conveying to the Missouri, Kansas & Texas Railway Company of Texas the right of way over said property and for depot grounds, and for partition of any balance between said grantees or purchasers, had the deed to said property made to said W. D. Wood for the purposes aforesaid; and said W. D. Wood, in accordance with said undertaking, has conveyed out of said property a right of way over same, and a sufficient quantity for depot grounds, which action of said Wood has been fully ratified and confirmed by said grantees in meeting assembled. And whereas, there is a portion of said land remaining,' etc.

"Thereafter E. Northcraft conveyed lots 8 and 9 in block 4 to the Texas Loan and Trust Company, and the latter conveyed them to B. F. Remington, and B. F. Remington conveyed them to S. R. Kone, who on April 5, 1902, conveyed them to the plaintiff J. A. Mott. It was shown that all of the conveyances herein referred to prior to the deed from Kone to the plaintiff, as well as the plat referred to, had been duly recorded in Hays County, where the property is situated, before the plaintiff bought.

"There was testimony tending to show and warranting a finding in support of the verdict, to the effect that the defendant, since the plaintiff purchased lots 8 and 9, has erected the stock pens complained of, which are in the nature of permanent improvements, and has been using the same as such pens are ordinarily used, for the purpose of shipping horses, cattle and other live stock, and that as a result of such use the plaintiff's property has been caused to materially deteriorate to the amount awarded by the jury as damages. The stock pens in question are located 124 feet from the plaintiff's lots. It was shown by undisputed testimony that the lots embraced in what is known as the 'Katy' addition, including the plaintiff's property, were not available for business purposes, and were suitable for and adapted to residence purposes only. Some evidence was submitted, pro and con, on the question of the manner in which in the pens had been maintained, and whether or not the defendant had exercised proper care in that respect; and the defendant requested and the court refused an instruction making liability depend on that question, and error is assigned upon the refusal of that charge.

"The court among other matters instructed the jury as follows:

" 'If you find from the evidence before you that the plaintiff, Mott, owned the property described in his said petition, before the defendant, the Missouri, Kansas & Texas Railway Company, erected or established its stock pens described in said petition, if you find from the evidence that they were so established and that said establishment of said pens is intended to be permanent; that said pens were and are used and

intended to hereafter be used for the purposes named in petition; that said uses for which said pens are used and to be used by defendant are of the character alleged by plaintiff, and does produce tangible and appreciable injury to plaintiff's property and renders its enjoyment essentially uncomfortable and inconvenient; and that by and because of the presence of said pens at that place and the uses to which they are devoted, the value of the plaintiff's said property was and is depreciated in market value; and you also find from the evidence before you that when and before defendant established its said stock pens it knew, or by the exercise of reasonable diligence might have known, or reasonably anticipated, that, by reason of such establishment of said pens at that point and their use for such purposes, the market value of plaintiff's said property would be thus depreciated, you will find for plaintiff and assess damages at such sum of money as will reasonably compensate him for such depreciation in the market value 'of his said property, and you are further instructed that if under the evidence before you and the foregoing instructions you should find that plaintiff has sustained damages by reason of the premises, then the measure of damages in this case would be the difference between the market value of said property immediately before the erection and establishment of said pens, and its market value immediately after they were so established.

" 'You are further instructed that the court in construing the instrument read in evidence under and by which the defendant holds title to the land upon which said pens are erected gives it the right to establish said pens at that point, but in so doing they are in law liable to the owner for all actual damages that they may sustain to their property in market value by reason of the presence of said pens. If you should find from the evidence before you that the presence of said pens at that point did not nor does not depreciate the market value of plaintiff's said property, you will find for the defendant.'

"The defendant, who is now appellant, has assigned error upon the charge of the court, under which assignment the question hereinafter certified is presented for decision, and it is material to a proper disposition of the appeal that the question referred to be decided.

"With this statement and explanation and in view of the facts as found, the Court of Civil Appeals of the Third Supreme Judicial District of Texas certifies to the Supreme Court for decision the following question:

"Does the deed from W. D. Wood to the defendant company, conveying the right of way referred to, authorize the defendant, if it exercises proper care, to construct and maintain stock pens at any place that it may select on said right of way, without incurring liability in the event that by so doing such property as the plaintiff's, held under a like chain of title, is caused to deteriorate in value? In other words, does the language of that deed, authorizing the defendant company to

use the right of way conveyed 'for the transaction of all business connected with said railway or incident thereto, subject only to the limitation of a contract entered into by said railway company and some citizens of the city of San Marcos,' authorize the defendant company, without incurring liability for damages if it exercises ordinary care, to locate and maintain its stock pens within 124 feet of plaintiff's residence, although by so doing the value of plaintiff's property may thereby be greatly diminished?"

The use to which a railroad company may put its right of way is prescribed by the following article of the Revised Statutes: "Art. 4483. Such corporation shall have the right to erect and maintain all necessary and convenient buildings and stations, fixtures and machinery, for the accommodation and use of passengers, freight and business interests, or which may be necessary for the construction or operation of its railway."

If the right of way in this case had been acquired by condemnation or by deed conveying the "right of way," the railroad company would have had the right to use it for the purposes mentioned in the statute. Calcasieu Lumber Co. v. Harris, 77 Texas, 23. Under the statute the railway company would not have the right to erect upon the right of way stock pens or any other improvements which, in themselves, would constitute a nuisance to those persons who might reside in proximity to the place of their location. Baltimore & P. Ry. Co. v. Fifth Baptist Church, 108 U. S., 317; Cogswell v. New York & N. H. & H. R. R. Co., 103 N. Y., 10; Trueman v. London & Brighton Ry. Co., L. R. 25 Ch. Div., 423; Denison & P. S. Ry. Co. v. O'Malley, 18 Texas Civ. App., 200.

It is claimed by the appellant that since the conveyance of the right of way made by Wood to the railroad company conferred upon the appellant the right to establish upon the land so conveyed "any business connected with said railway or incident thereto," and the stock pens being a business "connected with and incident to the railroad," the railroad company may by the exercise of proper care maintain the pens although they be a nuisance to those residing near by. The language of this conveyance must be interpreted by the surrounding circumstances in order to arrive at the intention of the parties. Newaygo Mfg. Co. v. Chicago & W. M. Ry. Co., 64 Mich., 114. At the time of the transaction the depot of the appellant was on the opposite side of the river from the town of San Marcos, and those citizens who owned the land over which the railroad's right of way was given desired to have the depot placed nearer the town to enhance the value of their property, and to secure this end made a donation of the right of way, the lands through which the right of way was given being suitable for residences only. At that time the stock pens of the railroad company were situated on the opposite side of the San Marcos River. Under these circumstances those who sought the removal of the depot into the town could not have intended by using the words, "business connected

with or incident to the railroad," to mean that the stock pens might be removed upon this right of way upon which the property of the donors abutted; stock pens used for such purposes are not desirable neighbors for families. Looking at all the circumstances that surrounded the transaction and the language used in the conveyance we think it was not intended to authorize the railroad company to establish a nuisance in the midst of the residence portion of that town. The fact that the property was not then occupied does not militate against this construction, because the purpose of bringing the railroad to that point was to enhance the value of the property, which would be defeated if a nuisance should be established where it would affect those who might wish to buy the lots with a view to living upon them. Such a construction is antagonistic to the manifest intention of the parties.

This language of the conveyance, "and for the transaction of all business connected with said railway or incident thereto," is not broader than that of the statute, "for the accommodation of the business interests" of the railroad company, and the right of the appellant would not be greater under the conveyance than under the statute.

In Trueman v. Railway Co., before cited, this question was directly involved. The railroad company claimed that it was empowered by statute to acquire the land for its business purposes and had the authority to establish stock pens upon it, but the court held the contrary and said: "When the land has once been acquired by the company for purposes contemplated by their act, whether voluntarily or by compulsion, it is not easy to see why on principle the company should be liable to an action for nuisance by a third party if the land was acquired voluntarily, and yet be free from liability to such action if the land was taken from its owner by compulsion." The converse of the proposition is true that the voluntary conveyance gives no greater right than a condemnation under the statute would have conferred. Houston E. & W. T. Ry. Co. v. Adams, 63 Texas, 200; Missouri K. & T. Ry. Co. v. Wetz, decided at this term. If a private individual owned this land in fee simple he could not establish upon it these stock pens; how can it be that the railroad company could have greater right except by explicit grant? The terms of such a grant must be quite plain to justify that construction.

We answer the question propounded that the deed from Wood to the defendant company did not authorize it to construct and maintain the stock pens at any place upon the right of way where they would constitute a nuisance to those who resided on the property adjacent thereto.