FT. WORTH & D. C. RY. CO. v. MAPES
et al.

(Court of Civil Appeals of Texas. Ft. Worth.
March 1, 1913. Rehearing Denied
March 29, 1913.)

RAILROADS (§ 222*)—OPERATION—NUISANCE—
LIABILITY.

A railroad company constructing and maintaining, as authorized by ordinance, tracks in a street for the storage and loading and unloading of cars, in connection with its depot, is not liable for injuries to an abutting owner, caused by noises, dust, cinders, and odors, though the tracks were originally constructed for private concerns, and though the private concerns are deriving more benefit from the tracks than the general public, since the company could under Rev. Civ. St. 1911, art. 6504, have condemned the land for the tracks if owned by the abutting owner, especially where the construction and operation of the tracks did not depreciate the value of the abutting property but enhanced its value.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 720–724; Dec. Dig. § 222.*]

Error to District Court, Wichita County; P. A. Martin, Judge.

Action by A. E. Mapes and another against the Ft. Worth & Denver City Railway Company. There was a judgment for plaintiffs, and defendant brings error. Reversed and rendered for defendant.

Huff & Bullington, of Wichita Falls, for plaintiff in error. Montgomery & Britain, of Wichita Falls, for defendants in error.

DUNKLIN, J. Mrs. A. E. Mapes owned a home in the city of Wichita Falls fronting on Michigan avenue, a public street running approximately north and south. She, together with her family, had occupied the home which was her separate property, for several years, when in 1910 the Ft. Worth & Denver City Railway Company constructed a side track along the center of Michigan avenue. It also constructed another side track intersecting the one in the center of the street in front of plaintiff's home and running in a southeasterly direction practically across the street and terminating at the Carroll, Brough, Robinson & Gates Company's wholesale house situated in the next block south of the block in which plaintiff's home is situated and on the same side of Michigan avenue.

Mrs. Mapes, joined by her husband, instituted this suit against the Railway Company to recover damages for personal discomfort which she alleged she suffered while occupying her home as the result of smoke, cinders, sparks of fire, and noises caused by the operation of defendant's engines and cars upon those side tracks and as a result of obstruction of ingress to and egress from her home caused by the standing of cars upon those tracks, all of which incidents constituted a nuisance. She alleged that the side tracks were constructed solely for the use and convenience of private persons and corporations owning lots abutting on said street, and that the location of those tracks upon that street was not necessary for the use or convenience of the public at large or for the purpose of performing any duty which defendant owed to the public; that such side tracks, located at some other places which were as available to defendant as those in question, and the use of same at such locations, would result in no annoyance to plaintiff in the occupation of her home. She also alleged that the nuisance complained of had depreciated the market value of her property and prayed for damages for such depreciation as well as for the personal discomfort suffered by her. In the court's charge the only measure of damages submitted was for the alleged annoyance and discomfort to plaintiff in the occupancy of her home, and the jury were expressly instructed not to consider the testimony which defendant had introduced upon the trial strongly tending to show that the market value of plaintiff's property had been enhanced by the construction of the side tracks in question, as thereby the property has been rendered desirable as trackage property, and hence more valuable for commercial purposes.

The main line of defendant's track crossed Michigan avenue south of the location of plaintiff's home, running diagonally across it, and adjacent to and parallel with this main line were six other side tracks also running diagonally across that street; the street being thus partially or wholly utilized by said side tracks and the main line for more than two blocks, beginning with the first block south of plaintiff's property. Defendant introduced evidence tending to show that the annoyances of which plaintiff complained were due in whole, or at least in part, to the operation of trains on these side tracks and the main line, and the court instructed the jury that no damage could be allowed plaintiff for discomfort suffered by her as a result of the operation of trains upon any tracks other than two side tracks first mentioned above which were constructed in front of her home. But in the charge the jury were instructed to allow plaintiff damages for such personal annoyance and discomfort suffered by her in the occupancy of her home as resulted from disagreeable noises, vibrations, and smoke incident to the operation of engines and cars upon the two side tracks in front of her home, provided the jury should further find that said tracks were constructed for the purpose of furnishing sidings to private enterprises alone and not for the use or benefit of the general public, and that such side tracks, if necessary for the handling of business for the public, could reasonably and practically have been constructed at some other place where the operation of the engines and cars thereon would work no inconvenience or annoyance

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

to plaintiff in her home. The jury were further instructed as follows: "If you believe from the evidence that the switch tracks complained of by plaintiff were constructed for the public use or for the benefit of the general public, and that it was reasonable and necessary that such switches should be so constructed in Michigan avenue in order that the defendant company might perform its duties to the public, then you will find for defendant; or if you believe that the plaintiffs have not suffered any annoyance or inconvenience from the operation of trains or engines on said switch, you will find for defendant."

For the alleged personal annoyance to plaintiff the jury allowed her damages in the sum of $575.

Plaintiff's petition contained no allegation that the defendant operated its engines and cars upon the side tracks in a negligent manner, but relied solely upon the contention that the operation of the same necessarily constituted a nuisance. The proof showed that, by two special ordinances of the city council of the city of Wichita Falls, defendant was granted the right to construct the two tracks in controversy upon and along Michigan avenue just as they were constructed. Appellant insists that the evidence conclusively showed without contradiction that the side tracks or switches in question were necessary and essential to the discharge of defendant's duties to the general public. But while there is much testimony tending to show that those tracks were necessary for the discharge of such public duties, yet there were other facts and circumstances in evidence which we think sufficient to sustain a finding by the jury to a contrary effect. Two of defendant's engine foremen and also its local agent employed in Wichita Falls at the time of the construction of the tracks and since that time testified to various uses made of the tracks including the storage of cars thereon, their use as team tracks, i. e., tracks upon which cars could be loaded and unloaded from and upon private vehicles.

It was shown by the evidence that the Pierce Fordyce Oil Company's tanks and also an elevator were situated on Michigan avenue and reached by the tracks in question. The local agent of the defendant further testified that one purpose of building the tracks was to serve the private industries located on the street such as the Carroll, Brough, Robinson & Gates Wholesale Company, but that they were built for any use that the company might see fit to make of them. He testified further: "It is true that we could have built tracks at other places to store cars. * * * I did not have anything to do with the construction of that track. I am only agent here. They did not tell me what the purpose was before they built it, but they told me after they built it, they said, 'Use it for what you see fit, anything you want to use it for.' The general superin-

tendent told me that. He told that because I asked him, and I asked him because it was a track. We do use all tracks for any purpose we want to. I asked him because he was there; he was looking over the ground. It was built there to be used for all purposes. This track along Michigan avenue is used for switching all of these industries; it is what we call a lead; all of these tracks lead off from it; we use it in going from one spur to the other; it would be the main line to all of these spurs. We have got to use it when we go there for any purpose."

W. M. Langford, one of the defendant's engine foremen, after testifying to the numerous uses made of the tracks including the storage of cars, said: "We have placed cars for the city, there to unload. This Carroll-Brough-Robinson-Gates Company's track is used principally to work that industry. We have spotted cars there; they use that as a team track. If a request is made to place cars on any convenient track, it would be granted; certain places were designated on that Michigan avenue track for cars to be placed, and they were placed there."

The official of the defendant company under whose direction the tracks in question were constructed, and who could have explained the purpose for which they were constructed, did not testify in the case.

Article 6481, Revised Civil Statutes 1911, reads: "Any railroad corporation shall have the right to construct and operate a railroad between any points within this state and to connect at the state line with railroads of other states."

In the case of Rainey v. R. R. T. & S. Ry., 99 Tex. 276, 89 S. W. 768, 90 S. W. 1096, 3 L. R. A. (N. S.) 590, 122 Am. St. Rep. 622, 13 Ann. Cas. 580, our Supreme Court held that an injunction might lie to restrain a railroad company from locating its machine and repair shops and necessary structures of a like character at such a place that their operation would cause personal annoyance and discomfort to citizens living in that vicinity when another location equally as useful and convenient for such purposes is available to the company. But in reaching that conclusion the court said: "Article 4445 of the Revised Statutes also provides that: 'If any railroad corporation shall at any time be unable to agree with the owner for the purchase of any real estate or the material thereon required for the purpose of its incorporation or the transaction of its business, for its depots, station buildings, machine and repair shops, or for the right of way, or any lawful purpose connected with or necessary to the building, operating or running its road, such corporation may acquire such property in the manner provided in this chapter.' The manner provided in the chapter is by condemnation. That a railroad company should have the right to designate its right of way and to condemn property therefor,

as well as to damage other property not taken, would seem almost a necessity. Article 4424 of the Revised Statutes reads as follows: 'Every railroad corporation shall have the right to cause such examination and survey for its purposed railway to be made as may be necessary to the selection of the most advantageous route, and for such purpose may enter upon lands or waters of any person or corporation, but subject to responsibility for all damage that may be occasioned thereby.' We think it a reasonable implication from this provision that it was contemplated that the company was empowered absolutely to select such right of way as it should deem 'most advantageous' to its enterprise. We are of the opinion, however, that the case of machine and repair shops and the like stands upon a different footing. From the statute first quoted above, it is seen that they have the express power to condemn land for such structures, and of necessity they must make the selection of the location. But in our opinion it does not follow that the Legislature intended to empower them to act arbitrarily and without regard to any injury that might be inflicted upon others."

In the case of St. L., S. F. & T. Ry. Co. v. Shaw, 99 Tex. 559, 92 S. W. 30, 6 L. R. A. (N. S.) 245, 122 Am. St. Rep. 663, the court held that plaintiff, who resided near a railroad company's depot, could not recover for the nuisance to her caused by noises, dust, cinders, and odors resulting from the operation of engines and trains upon its track near its depot station in the town of Denison, all constructed upon its right 'of way, said tracks including five spur tracks, in the absence of a showing that such trains were operated negligently, and in the opinion rendered in that case the court said: "Here, the defendant, in the location of its right of way, its main track, its freight depot, and such sidings and spurs as were necessary to the proper carrying on of its freight business and the discharge of its duties therein, did only that which the law authorized it to do. In other words, for the public good, its action in these regards, so long at least as it was only a reasonable exercise of the privileges granted, was made lawful; and any incidental damage resulting to members of the public, beyond that caused to their property, against which they are protected by the Constitution, is to be regarded as a damnum absque injuria, which must be borne because the work which inflicts it is authorized by law for the general welfare. Structures like that here existing are only such as the law requires railroad companies to have as a necessary part of their equipment and requires them to locate, not at designated places, it is true, but yet with proper regard to the public interests. As is pointed out in the Rainey Case, this was not true of such structures as were

there under consideration and as were involved in the cases first cited, the location of which the law did not attempt in any way to control or influence. That the right of way and track of a railroad company is excluded by the considerations stated from the operation of the principle of the cases referred to is expressly conceded 'in the Rainey Case and has long been the settled law; and this is equally true of depots and their necessary incidents. By articles 4492 and 4493, Revised Statutes, railroad companies are required to locate their depot grounds before they construct their roads and are forbidden to change them, and by article 4519 they are required to erect at such depots suitable buildings, etc. It is hardly necessary to add that side tracks at such stations are an essential part of the road, and are as much authorized and required as the main line and stations. It cannot be held, therefore, that the mere location of such tracks and stations near to the property of others gives rise to the liability here asserted. If so, the same liability would arise to every one who might be annoyed by trains passing along the main line, for no reason could be given for the liability in one case which would not be valid in support of it in the other; and yet it has often been held that no such liability can be sustained consistently with the law which authorizes the construction of such quasi public works."

In the case of Daniel v. F. W. & R. G. Ry. Co., 96 Tex. 327, 72 S. W. 578, it was held that damages recoverable resulting from a nuisance caused by dust and noise emanating from the use of a coal hoist from which locomotive engines were supplied with coal were not limited to depreciation in the market value of property located in that vicinity, but might include personal annoyance and discomfort suffered by the occupants of such property. In M., K. & T. Ry. Co. v. Mott, 98 Tex. 91, 81 S. W. 285, 70 L. R. A. 579, it was held that damages for the depreciation in the market value of residence property by reason of the maintenance of stock pens were recoverable. In Boyer v. St. L., S. F. & T. Ry. Co., 97 Tex. 107, 76 S. W. 441, it was held that the railway company was liable for the depreciation in the market value of property caused by the nuisance resulting from the construction and operation of a railway in a street upon which the property abutted. And to the same effect substantially was the decision in Rainey v. Railway, supra.

It was shown by uncontroverted proof that during the maintenance of the alleged nuisance the side tracks were used for the service of the public at large in connection with appellant's depot at Wichita Falls, in fact for practically the same purpose as any other side track in defendant's yards. And even though it should be held that the use of the

side tracks originally intended was not such as to give appellant the right of condemnation under the circumstances instanced, we think it can make no difference, since the use now made of the track is unquestionably for the benefit of the general public. For such uses as are now made of the tracks in question, appellant could have condemned the land covered by Michigan avenue if the same had been owned by appellee and had not been appropriated for a public street, even though the private concerns located on Michigan avenue derive more benefit therefrom than does the general public. Rev. Civ. Stat. 1911, art. 6504; Railway v. Shaw, supra; Mangan v. Texas Transportation Co., 18 Tex. Civ. App. 478, 44 S. W. 998–1001, and authorities there cited; 15 Cyc. 588–590; M. & St. L. Ry. Co. v. Nicolin, 76 Minn. 302, 79 N. W. 304.

Plaintiff introduced no evidence to show that the market value of her property was depreciated by reason of the construction and operation of the side track in question, while evidence introduced by appellant showed conclusively that the market value of the property was enhanced by the construction and operation of the tracks, as the property was thereby rendered more valuable for commercial uses as trackage property. In view of this proof made by appellant, and as no proof to the contrary was offered by appellee, no reason appears for remanding the cause for trial upon that issue.

For the reason indicated, the judgment of the trial court is reversed, and judgment here rendered in favor of appellant.