JOHN STUHL v. GREAT NORTHERN RAILWAY COMPANY.[1]

February 23, 1917.

Nos. 19,969—(120).

**Nuisance — recovery of consequential damages.**

1. Under a constitutional provision that "private property shall not be taken, destroyed or damaged .for public use, without just compensation therefor first paid or secured," a property owner may recover for special pecuniary damage to private property through the construction and operation of a railroad, though the damage is consequential and results from structures or operations that do not invade his land.

**Same — right of eminent domain not decisive.**

2. This does not give a right of recovery for acts which, under general rules of law, do not constitute actionable wrong. The right of recovery is substantially the same as against one not armed with the power of eminent domain.

**Same — test of liability.**

3. The reasonableness or necessity of the location of the structure is not the test of liability nor is negligence in its operation the sole test. The test is whether the structure is a private nuisance for which an action for damages will lie at common law.

**Whether public or private nuisance — compensation.**

4. If statutory authority is given for the structure, it cannot be a public nuisance but it may be a private nuisance. The legislature can-

1Reported in 161 N. W. 501.

not authorize the maintenance of a nuisance without compensation to one specially injured thereby.

Action in the district court for Stearns county to recover $5,000, and to enjoin defendant from using certain premises as a stockyard. The facts are stated in the opinion. The answer alleged that the stockyards in question had always been kept in a cleanly manner and no nuisance had ever been permitted in connection therewith, except such as are physically inseparable from the loading and unloading of stock upon and from the trains; that, in locating the stockyards for the accommodation of shippers and the general public, defendant excercised care and selected the most practicable place in the village consistent with the public service and the operation of the railway through the village in performance of its duties as a common carrier. The case was tried before Nye, J., who made findings and ordered judgment for $200 in favor of plaintiff. Plaintiff's motion for amended findings, granting a permanent injunction against defendant, was denied. From the judgment entered pursuant to the order for judgment, defendant appealed. Affirmed.

*M. L. Countryman* and *James R. Bennett, Jr.*, for appellant.
*J. B. Himsl*, for respondent.

HALLAM, J.

In 1909 plaintiff purchased a five-acre tract of land just outside of the platted portion of the village of Albany, and erected a dwelling house thereon which he and his family have since occupied as a home. South of his dwelling is a public highway, and immediately south of the highway are defendant's right of way and tracks.

In 1910 defendant constructed on its right of way, 79 feet from plaintiff's dwelling house, a stockyard with pens and sheds for holding and loading stock. Shipments of stock are usually made twice a week during certain seasons and stock is brought and kept until shipments are made. This causes the noise and foul odors usually incident to stockyards. Albany is situated in a farming and stock raising community. Stockyards, in or adjacent to the village station, are necessary. The present location is not the only feasible one, though it is the most convenient

for shippers and for defendant. The trial court found that plaintiff had suffered damage to his real estate and in the use and occupation of it up to the time of the commencement of this action in 1911 in the sum of $200.

Defendant contends that the court having found that the stockyards at Albany are properly located and carefully maintained and operated, it must follow that no nuisance either public or private can result from such location and operation. Yet it must be clear that stockyards though prudently managed may, if located near a residence, constitute a private nuisance and this the court in effect found this stockyard to be. This suggests the real question in the case which is, can a property owner recover damages for an injury to his property caused by the construction and maintenance by the railroad company of a structure or facility which is necessary to the operation of the road, and which is located in a place where it will do as little damage as possible and at the same time serve its public purpose and is conducted or maintained without negligence? We think in some cases he may and that this is such a case.

We must of course not overlook the fact that this defendant is operating a public utility, that this stockyard is one of its facilities used to that end, and that the property on which it stands is accordingly devoted to a public use, and the question is what is the liability of defendant as to damages resulting to private parties from property so devoted.

1. Prior to 1896, art. 1, § 13, of the Constitution of this state read: "Private property shall not be taken for public use, without just compensation therefor first paid or secured." In 1896 this section was amended so as to add, after the word taken, the words "destroyed or damaged."

Under the former provision it was held that the right to damage given by the Constitution was confined to the particular tract of land the whole or part of which was taken. Peck v. Superior Short Line Ry. Co. 36 Minn. 343, 31 N. W. 217; Cameron v. Chicago, M. & St. P. Ry. Co. 42 Minn. 75, 43 N. W. 785. Some other authorities are to the effect that under similar constitutional provisions there must be trespass upon or actual appropriation of the *corpus* of the property to give a right to damages. 1 Lewis, Eminent Domain, § 66; 3 Dillon, Mun. Corp. § 1017; Chicago v. Taylor, 125 U. S. 161, 8 Sup. Ct. 820, 31 L. ed.

638; McCullough v. Village of Campbellsport, 123 Wis. 334, 101 N. W. 709; Rigney v. City of Chicago, 102 Ill. 64. Yet, even under similar provisions, the owner of property in the neighborhood of, but not abutting upon, land taken for public use, has sometimes been held to have a claim for damages arising out of the operation of the road as in Richards v. Washington Terminal Co. 233 U. S. 546, 34 Sup. Ct. 654, 58 L. ed. 1088, L.R.A. 1915A, 887, where damage arose from gases and smoke emitted from locomotives while in a tunnel, and by means of a fanning system forced out at the mouth of the tunnel in such manner as to render the property less habitable and to depreciate it in value. It was said that the act of Congress authorizing the tunnel did not authorize the imposition of so direct and peculiar and substantial a burden upon plaintiff's property without compensation to him, that if the damage was not reasonably preventable the property should be condemned, and if reasonably preventable the statute furnished no excuse.

Under the amended provision of our Constitution it is clear that the right to damages is not dependent on physical injury to the *corpus* of the property affected. It is sufficient if there is a physical disturbance of a valuable right in the property. It is not necessary that there be a trespass on the owner's real estate. It is sufficient that the construction and operation of the public utility is the cause of some special pecuniary damage, and though the damage is consequential the owner may recover. Chicago v. Taylor, 125 U. S. 161, 8 Sup. Ct. 820, 31 L. ed. 638; Chicago & W. I. R. Co. v. Ayres, 106 Ill. 511, 518; Dickerman v. City of Duluth, 88 Minn. 288, 92 N. W. 1119; Austin v. Village of Tonka Bay, 130 Minn. 359, 153 N. W. 738.

2. This does not mean that the amendment gives a right of recovery for acts which under general rules of law do not constitute actionable wrong. The purpose of the change is not to change the substantive law of damages or to enlarge the definition of that term. It was rather the purpose to make the law of damages uniform, so that a property owner may recover against persons or corporations having power of eminent domain, under the same circumstances that would have authorized recovery against one not armed with that power. Austin v. Augusta Terminal Ry. Co. 108 Ga. 671, 34 S. E. 852, 47 L.R.A. 755; Baker v. Boston Ele. Ry. Co. 183 Mass. 178, 66 N. E. 711; Rigney v. City of

Chicago, 102 Ill. 64, 80; Tidewater Ry. Co. v. Shartzer, 107 Va. 562, 59 S. E. 407, 17 L.R.A.(N.S.) 1053. See also Baltimore & Potomac R. Co. v. Fifth Baptist Church, 108 U. S. 317, 2 Sup. Ct. 719, 27 L. ed. 739.

3. The reasonableness or necessity of the location of the structure or facility is not the test of liability any more than it would be if the necessities of railroad construction resulted in cutting off access to plaintiff's property. The presence or absence of negligence is important, for negligent use may make a structure a nuisance which would not be a nuisance otherwise. But negligence is not the sole test of liability. There may be liability without negligence. In the absence of negligence the test is whether the structure is a nuisance, for which action will lie at common law, not a public nuisance, for such are for the public authorities to deal with, but a private nuisance, for which damages may be recovered by an individual under general rules of law. Statutory authority does not give immunity in such a case. "What is authorized to be done by law cannot be a public nuisance yet it may be a private nuisance as to individuals who are specially injured thereby." Romer v. St. Paul City Ry. Co. 75 Minn. 211, 77 N. W. 825, 74 Am. St. 455; Louisville & Nashville Terminal Co. v. Lellyett, 114 Tenn. 368, 85 S. W. 811, 1 L.R.A. (N.S.) 49.

4. The foregoing states what is substantially the rule of Matthias v. Minneapolis, St. P. & S. S. M. Ry. Co. 125 Minn. 224, 146 N. W. 353, 51 L.R.A.(N.S.) 1017. In that case defendant was held liable in damages for construction and operation of a switch yard near plaintiff's home, although it was held that the location was a proper one. It was said that "while suitable location has a bearing on the question it is not controlling," that the "right not to be injured by a nuisance on adjoining land cannot be taken without compensation," quoting 1 Lewis, Eminent Domain, § 238. The court there took pains to say that under our present Constitution there can ordinarily be no recovery of damages for the noise, soot, cinders, smoke and dust coming from the common operation of a train. These are like the noise, smoke, soot, cinders and dust emanating from the common operation of all industrial activities, and unless they are imposed with accumulated force as in Richards v. Washington Terminal Co. 233 U. S. 546, 34 Sup. Ct. 654, 58 L. ed.

1088, L.R.A. 1915A, 887, they are *damnum absque injuria*. We must all expect to endure, in varying degrees, the inconveniences that are reasonably incident to the prosecution of necessary public enterprises. But one citizen should not be expected for the public good to bear, uncompensated and alone, a material and special injury not common to the public at large. "It is a plain dictate of justice that the public, not the individual citizen, should bear the burdens imposed upon private property for the public benefit." Cumberland Tel. & Tel. Co. v. United Ele. Ry. Co. 93 Tenn. 492, 520, 29 S. W. 104, 111, 27 L.R.A. 236.

Dolan v. Chicago, M. & St. P. Ry. Co. 118 Wis. 362, 95 N. W. 385, differs in essential particulars from this case. Among other points of difference is the fact that the Wisconsin Constitution is not like ours, and the further significant fact that the plaintiff in that case chose to build his house close to the stockyard after the yard had been established. We are not deciding that sort of a case. The character of the property, the uses to which it is adapted and the manner of its use at the time of the erection of the structure complained of, are important in determining whether there is actionable damage. We are not deciding a case of alleged damage to unoccupied land, or agricultural land. We limit our decision to the facts of this case.

We have found no "stockyards case" in the books that is controlling. Most of those other than the Dolan case are cases where the complaint arose from negligent management (Anderson v. Burlington, C. R. & N. Ry. Co. 82 Minn. 293, 84 N. W. 1021; Anderson v. Chicago, M. & St. P. Ry. Co. 85 Minn. 337, 88 N. W. 1001; Shively v. Cedar Rapids, I. F. & N. Ry. Co. 74 Iowa, 169, 37 N. W. 133, 7 Am. St. 471; Illinois Cent. R. Co. v. Grabill, 50 Ill. 241; Missouri K. & T. Ry. Co. v. Mott, 98 Tex. 91, 81 S. W. 285, 70 L.R.A. 579), and that fact entered into the decision. We do not find in any of them, however, any principle stated that goes counter to the position we have taken here.

We regard the evidence sufficient to sustain a finding that the stockyard of defendant at Albany caused a material and special injury to plaintiff and that he has an action therefor. Judgment affirmed.