We find ourselves in disagreement with the views expressed by Mr. Justice Stone and therefore set out the following reasons for our views.
A "pothole" described by appellant Larson, owner of the 160-acre farm adjoining that of Busse, as "probably 1,400 feet long and probably 500 feet wide" and containing about ten acres, is sought to be drained under the provisions of our township ditch law. It is "practically level" land consisting of a "kind of peaty" soil "suitable for raising crops if drained." While it is "very seldom soft and wet," it has not been plowed, "because if we have a heavy rain *Page 574 
for quite a while it would get wet," thereby making its use precarious for the raising of cultivated crops. The town board in conformity with the statute (§ 6848) established the drain, having first determined that the drain "will be of public utility or promote the public health." Under the statute (§ 6853) appeals are limited to the issues of: (1) The "amount of benefits to any tract of land" involved in the proceedings; (2) "amount of damages allowed" to any landowner whose property may be damaged by the establishment of the drain; and (3) for "refusing to establish such proposed ditch." The appeals here involved are based upon the second ground. So the issue narrows down to the question of whether the rule as to damages adopted and applied by the court at the trial is the correct one.
All parties are in agreement that if Larson owned the land to the point where the established drain outlets on Busse's land, or if Busse consented to have it so extended, the surface water there discharged into the watercourse would not justify the recovery of damages on the part of any landowner below. The record also clearly shows that the only practical way to bring about the desired improvement so as to be of "public utility" and "promote the public health" is by the construction of the proposed drain. This is so for the reason that the surface water, as conditions now exist in and around this pothole, has for its outlet only a long, crooked, horseshoe route lying almost wholly in the adjoining county of Martin.
Obviously, the construction of the drain does not create water; it but lowers the water level. That the surface water flow ultimately finds its outlet in the watercourse passing over the easterly portion of Busse's land is equally clear. That the owners of lands lying below must accept this burden without compensation is conceded by the majority, since in the opinion it is stated that Larson then "would be in the exercise of lawful right in doing just *Page 575 
what the town is doing by way of drainage." And, so the opinion further postulates, "if the town were exercising the police power of government, without more, the case would be one ofdamnum absque injuria."
The town is exercising its police power and could not establish the ditch unless it were of public utility or beneficial to the public health. From the standpoint of constitutional law the benefit to individual proprietors is merely incidental to the public benefit. In Lien v. Board of Co. Commrs. 80 Minn. 58, 64, 82 N.W. 1094, 1096, this court in discussing the county drainage act said:
"Section 1 of the act clearly shows that the intent and purpose of the legislature was to further and promote the public interests, and section 9 makes a finding of such public purpose an essential to the jurisdiction of the commissioners to proceed. This is clearly conclusive against appellants' contention that the objects of the statute are in furtherance of private interests. It does not matter that in accomplishingthe public objects of the act private interests are advanced.Such a result is merely incidental, and does not affect thevalidity of the law." (Italics supplied.)
We find nothing in the constitutional provision in regard to the taking or damaging of property for public purposes which establishes any change in the rule of damages which are to be assessed or recovered in a situation of this kind, nor does the statute referred to in the opinion indicate a change in the rule as to damages assessable. Neither the constitution nor the statute creates any new right or cause of action. We need go no further on this question than to quote from the unanimous opinion of this court in McCarthy v. City of Minneapolis,203 Minn. 427, 429, 281 N.W. 759, 760, in which we said:
"By the constitutional amendment covering damage without taking, no new cause of action unknown to the common *Page 576 
law was created. The amendment but removed a bar imposed by some legislative and some constitutional law to one species of action in tort. Its incidence is not on 'the substantive law of damages.' Its only purpose is to allow recovery in the same circumstances and manner against corporations having power of eminent domain as against those not enjoying that power (Stuhl v. G. N. Ry. Co. supra [136 Minn. 158, 161 N.W. 501, L.R.A. 1917D, 371]) — 'to give a remedy merely for legal wrongs, and not for such injuries as were damnum absque injuria.' Smith v. St. P. M. M. Ry. Co. 39 Wn. 355, 366, 81 P. 840, 844,70 L.R.A. 1018, 1024, 109 A.S.R. 889."
This statement of the law is supported by the overwhelming weight of authority in the state and federal courts. In fact, it was but a restatement of the law already established in this state by Stuhl v. G. N. Ry. Co. 136 Minn. 158, 161 N.W. 501, L.R.A. 1917D, 317. It is well established, then, in this state, that the constitution uses the word "damaged" as a legal term and as the equivalent of actionable wrong and that it does not modify the principle expressed in the phrase "damnum absqueinjuria."
It remains for us to discuss the question of whether the casting of surface waters by the township, in the exercise of its police power functioning through the right of eminent domain, creates a liability on its part which would not rest upon an individual who was in a position, without trespass, to cast the same surface waters upon the same place. It has been stated in our decisions that "in the matter of the drainage and disposition of surface waters, a town has the same rights and is subject to the same liabilities as an individual." This the court said speaking through Mr. Commissioner Lees in Sandmeier v. Town of St. James, 165 Minn. 34, 36, 205 N.W. 634, 635. It is true that in that case the court was discussing the drainage of a highway by the township, but we can see no difference in principle between the exercise of its governmental *Page 577 
functions by a township in the drainage and protection of its highway from the exercise of its police power in the interest of public health. In the case at bar, the town board, acting within the delegated police power conferred upon it by the state, took surface waters from the dominant area, which happened to be owned by Larson, and, by the most direct route, cast it upon the servient estate of Busse, where it would have gone naturally by a more circuitous route had it been practicable to drain it in the latter way. Is there any difference in the legal situation than if the town board had conducted surface waters away from its highway by a lateral ditch constructed in the exercise of its right of eminent domain and cast them upon Mr. Busse's land? It strikes us that the state's police power properly delegated to the township extended as a paramount right throughout this drainage area, and, when properly invoked by petition, as in this case, it was a dominant right superior to private titles, which it might exercise in the interest of the public health and public interest. In so doing, we think it might cast surface waters from any dominant part of the area to any servient part thereof, and that it had the same right as an individual might have in circumstances where he was as free to exercise it as the township is here. Larson might reasonably cast the surface waters from his land upon Busse's even if he had to pump them over the ridge or hogback, provided he did not in his operations trespass upon Busse's land. The township, on the other hand, might do what Larson as an individual could not do because it could relieve itself of the status of trespasser by exercising its right of eminent domain to enter upon Busse's land by paying him for the physical invasion in undertaking the construction of the tile drain and discharge basin. It is true that in State ex rel. Wickstrom v. Board of Co. Commrs.98 Minn. 89, 94, 107 N.W. 730, 732, this court, speaking through Mr. Justice Jaggard, said: *Page 578 
"No good reason suggests itself for extending that doctrine [Sheehan v. Flynn, 59 Minn. 436, 61 N.W. 462] to cases of county ditches, in which the public may undertake to drain large tracts of land belonging to many proprietors, notexclusively of surface waters, and to divert the resulting waters and cast them in large and injurious quantities upon the lands of others."
But it is quite apparent that the court there had in mind a situation which was not confined to surface waters, and this court in Oftelie v. Town of Hammond, 78 Minn. 275,80 N.W. 1123, as well as in the later case of Sandmeier v. Town of St. James, 165 Minn. 34, 205 N.W. 634, took the position that, insofar as the disposition of surface waters is concerned, the town has the same rights and is subject to the same liabilities as an individual. We do not regard Grey v. Reclamation Dist.174 Cal. 622, 640, 163 P. 1024, 1032, cited by the majority, as establishing any other doctrine. In that case flood waters rather than surface waters were involved, and the court states: "Where the police power is legitimately exercised, uncompensated submission is exacted of the property owner if his property be either damaged, taken, or destroyed." We do not regard this as indicating that a physical invasion, such as was involved on Busse's property by the tile ditch and discharge basin, would be regarded by the California court as not compensable, but that it was referring to the disposition of water. It said that its constitution by the use of the word "damaged" "did not, touching the exercise of the police power, give a right of action for damages which theretofore weredamnum absque injuria." In Jordan v. City of Benwood, 42 W. Va. 312,26 S.E. 266, 36 L.R.A. 519, 57 A.S.R. 859, the court had before it the question whether or not the city was liable for surface waters which its work for the first time brought upon the plaintiff's lot from other premises than hers, and the court held that the common-law rule as to the disposition of surface waters was applicable *Page 579 
to the city and that the word "damaged" put into the constitution of that state was not designed to put on the state or its subdivisions a burden not resting on individuals under like circumstances. This case involved not only surface waters which accumulated on the city's streets but which originated on other lots than plaintiff's and were cast upon her land by reason of the city's operations in the exercise of its police power. In Rhodes v. Airedale Drainage Commrs. Law Rep. 1 C. P. Div. p. 402, the court of appeal in that division held that the plaintiff was entitled to no greater or different relief against the drainage commission than against any individual riparian owner. The court also held that the word "damage," as used in the act, did not enlarge or extend the legal damages or include damages theretofore regarded as damnum absque injuria.
In the case of Board of Drainage Commrs. v. Board of Drainage Commrs. 130 Miss. 764, 95 So. 75, 28 A.L.R. 1250, the court made no distinction between the rights of public drainage districts and those of private individuals with reference to the disposition of surface waters and, in disposing of the case, grounded its decision upon the rules which govern the disposition of such waters as between individuals. The majority seems to have adopted the dissenting views expressed by Mr. Justice Ethridge in his special concurrence.
Rieck v. Schamanski, 117 Minn. 25, 134 N.W. 228, and Hartle v. Neighbauer, 142 Minn. 438, 172 N.W. 498, are helpful.
We are of the opinion that the trial court was right in submitting the case to the jury and excluding from their consideration damages to Busse's land due to the surface waters that might be cast into the natural drain and in directing a verdict against the lower proprietors. We think that his later act in granting a new trial for errors of law alone should be reversed and the verdicts reinstated. *Page 580