PANHANDLE & S. F. RY. CO. v. HURST
et al.   (No. 2051.)

(Court of Civil Appeals of Texas.   Amarillo.
April 25, 1923.)

**1. Municipal corporations ⟨⟩823 — Findings held too conflicting to support judgment.**

In an action against a railway company for injuries by falling into a pit maintained by defendant in a public street, findings that a person of ordinary care would have stepped upon the cover of the pit; that when plaintiff stepped on the cover he was not exercising ordinary care; that his failure to use ordinary care did not contribute to his injuries; and that the particular portion of the street in question was habitually used by the public and had been abandoned by the citizens of the town—are conflicting, and will not support a judgment for plaintiff.

**2. Municipal corporations ⟨⟩663(1)—Abutting owner owns fee to center of the street.**

As a general rule, the owner of a lot abutting upon a street owns the fee to the center of the street.

**3. Eminent domain ⟨⟩100(1)—Abutting owner has rights in streets of which he cannot be deprived without compensation.**

An owner of property abutting a street, though he owns no part of the fee of the street, has certain easements or incorporeal rights to which the use thereof, and such easements or rights are property rights of which he cannot be deprived without full compensation.

**4. Dedication ⟨⟩53 — Where dedication for streets conveys only easement, grantees of abutting lots own fee.**

Where an original dedication of property to a city and to the public for streets conveys only an easement for streets, the fee to the center of the street passed to the grantees of abutting lots.

**5. Municipal corporations ⟨⟩658—City cannot alienate streets, but must hold them in trust for public.**

In the absence of legislative authority, the city has no power to alienate or otherwise dispose of its streets, but must hold them in trust for the public.

**6. Municipal corporations ⟨⟩682(2) — City without power, in absence of statute, to grant exclusive privilege or franchise in streets.**

Except where authorized by statute, either expressly or by necessary implication, the power conferred on a municipality to grant certain rights in a street does not authorize it to grant an exclusive privilege or franchise therein.

**7. Railroads ⟨⟩75(3)—Consent to use streets necessary.**

Under the common-law rule, recognized in Vernon's Sayles' Ann. Civ. St. 1914, art. 6497, a railway, without the consent of the city, properly given, cannot construct its line upon or across the streets and alleys of the city.

**8. Municipal corporations ⟨⟩684 — Grant of special rights in streets construed strictly against grantee.**

A grant by a municipality, of special rights or privileges in the use of its streets, is always construed most strictly against the grantee, and in case of doubt must be construed in favor of the public.

**9. Railroads ⟨⟩77—Railway maintaining structures in street, under ordinance closing street, held a trespasser or at most a licensee.**

A railroad maintaining a pumping station and exhaust pit in a city street claiming the right to do so by reason of a city ordinance, closing such street to the public, held to be a trespasser or at most a licensee, maintaining a nuisance without authority.

**10. Municipal corporations ⟨⟩680, 681(6) — City may grant railroad right of way in streets, but such grant presumed to preserve rights of public use.**

Municipalities may grant steam railways the right to construct their lines through the corporate limits of the city and across the streets and alleys, but, in the absence of a clearly expressed intention to the contrary, such a grant is subject to the existing public right of use, and is to be exercised in such manner as to interfere as little as possible with those for whose benefit the street was originally established.

**11. Adverse possession ⟨⟩8(2)—Railway company cannot acquire title to street by prescription.**

Under the express provisions of Vernon's Sayles' Ann. Civ. St. 1914, art. 5683, a railway company cannot acquire title to a street by limitation or prescription.

**12. Municipal corporations ⟨⟩657(3)—Abandonment of street not shown by permitting railway company to use same.**

A street may not be lost by abandonment because of nonuse by the public, and the act of a city in permitting a railway to occupy a part of one of its streets is ordinarily not sufficient of itself to show abandonment.

**13. Evidence ⟨⟩186(9) — Ordinance record book admissible to establish contents of lost ordinance.**

Under the rules for establishing the contents of lost instruments, where an original ordinance with a blue print referred to therein, as Exhibit A, could not be found, the ordinance book in which the ordinance was recorded was admissible with other testimony to show actual occupancy by a railroad of streets under claim of right, where such streets had been authorized closed by said ordinance.

**14. Adverse possession ⟨⟩8(2)—Ordinance not admissible to show right of railroad by limitation or prescription in city streets.**

Evidence of the contents of a city ordinance, purporting to give defendant railway company the exclusive use of certain streets and alleys and authority to close the same to the public, is not admissible to show any rights by limitation or prescription to such streets, contrary to the express provisions of Vernon's Sayles' Ann. Civ. St. 1914, art. 5683.

---

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**15. Master and servant ⬥⬥354 — Employee compensated for injury held not estopped to sue negligent third person.**

In an action against a railway company for injuries suffered by an employee of a company, insured under the Workmen's Compensation Act (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246zzzz), *held*, that the principles of estoppel had no application to plaintiff's cause of action though he had been compensated for his injury by the employer's insurer claiming subrogation as against defendant for the amount of compensation paid.

Appeal from District Court, Lubbock County; W. R. Spencer, Judge.

Action by J. M. Hurst against the Panhandle & Santa Fé Railway Company, in which the Utilities Indemnity Exchange intervened, and in which the Texas Utilities Company was brought in as a defendant. From a judgment for plaintiff and for intervener and for the defendant interpleaded and against the railway company, the railway company appeals. Reversed and remanded.

Terry, Cavin & Mills, of Galveston, Wilson & Douglas, of Lubbock, and Madden, Trulove, Ryburn & Pipkin, of Amarillo, for appellant.

Geo. R. Bean, of Lubbock, for appellee Texas Utilities Co.

Bledsoe & Pharr, of Lubbock, for appellee Hurst.

HALL, C. J. The appellee Hurst sued the appellant railway company in the district court of Lubbock county, to recover damages on account of certain alleged personal injuries which he received while working for the Texas Utilities Company, at Lubbock, on the 12th day of August, 1920. He alleged, in substance, that prior to the date of his injuries the defendant railway company had maintained a pumping station in Lubbock; that the station was situated in Pecan street near its intersection with North Second street; that immediately south of the pumphouse defendant railway company had constructed a pit into which the exhaust steam, hot water, and oil from the pump and engine were discharged; that said pit was full of boiling water when the engine was in use and for a long time after the pumping would cease; that the company had caused the pit to be covered with planks which were loose at the time of and prior to the accident, and which defendant had negligently allowed to remain loose and to become covered with grease and oil; that the said company, its agents, and employees knew that said pit was located in the street and was in a dangerous condition for any one passing over it; that while plaintiff was in the discharge of his duties as an employee of the Texas Utilities Company, and without knowledge of the condition of said pit, he stepped upon it, and, by reason of the planks being loose and greasy, one of them slipped, and plaintiff fell into the pit, which was at the time full of boiling water, resulting in scalding both of plaintiff's feet and legs below his knees. He prays for $300 doctor's bills, $100 drug bills, and $25,000 damages.

The defendant railway company answered, alleging that its pump exhaust pit were maintained in the usual and customary manner, upon property belonging to it and under its control; that the pumping plant was located upon what formerly had been a public street or streets, but that said streets had been duly and regularly closed by an ordinance enacted by the city council of Lubbock on the 9th day of June, 1909, and known as ordinance No. 16, and had ever since been claimed and occupied as part of the defendant's right of way, upon which it had paid taxes and used, free from any adverse claim whatever; that the use of said premises, or any part thereof, by the Texas Utilities Company and its employees, was wholly unauthorized; that plaintiff and the other employees of the utilities company were trespassers upon the premises; that some weeks prior to the date of the accident the utilities company had been granted temporary permission by the railway company to unload sand and gravel upon the right of way, but that no permission had ever been given the utilities company to use said premises for the purpose of mixing concrete, or the maintenance of a track for hauling such material, or for the performance of labor in connection with repairs, or improvements upon the utilities company's plant, as was being done by appellee Hurst at the time of the accident.

It is further alleged that the appellee was guilty of contributory negligence in failing to look where he was walking, and in looking behind instead of ahead while moving about in the performance of his work; that, if the top of said pit was in a dangerous condition, it was open and apparent to the appellee, who was in better position to discover such alleged defects than any one else; that he stepped upon the plank cover of the pit when it was possible for him to go around it, and in other ways to avoid stepping upon it; that in repairing their plant the utilities company had been moving timbers, heavy machinery, and materials and placed them upon and about the covering to said pit without the knowledge of the plaintiff, and that, if the planks upon the pit were loose, the condition resulted from the acts of plaintiff and his coemployees, and not through any negligence of the railway company; that, if the railway company is mistaken in alleging that plaintiff was a trespasser, then it alleges that plaintiff was a licensee and as such he accepted the premises in the condition in which he found them and assumed all

⬥⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the dangers and risks incident to his employment; that, if said ordinance No. 16 was not authorized by law, the railway company believed it to be valid, and so believing constructed its pumping plant at great cost upon said property, and which was necessary to the operation of defendant's road, more than 10 years prior to the date of the accident, where it has remained continuously ever since 1909; that that portion of said streets upon which its pumping plant was constructed was never opened, worked, or improved by the city but has been abandoned as a street and has never been used as such; that the Texas Utilities Company, for whom appellee was working at the time of his injury, was a subscribing member of the Texas Employers' Insurance Association, which was known to the appellee; that appellee has received compensation from said association on account of his injuries and by so accepting said compensation said association is now subrogated to all rights of the appellee, if any, on account of his injuries, and is therefore a necessary party to this suit; that before the institution of this suit plaintiff exercised his option to proceed against said insurance association under the Workmen's Compensation Law (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246zzzz), and was heretofore compensated by the Utilities Indemnity Exchange, a Missouri corporation, for the entire period covering plaintiff's alleged disability, the exact amount of compensation received from the Insurance Association and from the Indemnity Exchange being unknown to said railway company, but upon information and belief the railway company alleges it to be the sum of $425, and having proceeded to collect damages from such other parties, plaintiff is barred from again recovering against the defendant railway company; that the Texas Utilities Company, for whom appellee was working at the time of the accident, for its own convenience, had obtained the permission of defendant railway company to unload a car of sand on the right of way at a point near the pumping plant, and after unloading said sand, without the knowledge or consent of the Railway Company in proceeded to use the sand in mixing concrete on the right of way near where the sand was unloaded, for use in repairing the plant of said Texas Utilities Company, which adjoined the right of way of said railway company; that in the prosecution of said work the utilities company left only a narrow passageway for its employees to use in carrying on its work, and had thrown large pieces of timber upon the cover of said exhaust pit, which resulted in its dangerous condition.

The appellee filed a supplemental petition, urging certain exceptions, and which alleged specially that, if the railway company had a right to the use and occupancy of the public streets where the pit was maintained, it was nevertheless a place commonly and generally used by the public as a passageway in going from one part of the city to another, and that the public had acquired the right to so use it; that said premises were never at any time inclosed by the railway, but were permitted to remain open.

The Utilities Indemnity Exchange, a Missouri corporation, doing business within the state of Texas, under the Workmen's Compensation Law, intervened, alleging, in substance, that, at the time plaintiff received his injuries, the Texas Utilities Company had complied with all the requirements of the Texas Workmen's Compensation Law; that it had issued a policy of indemnity to the Texas Utilities Company, which was in force when this suit was filed, and that in compliance with the requirements of its said policy it had paid plaintiff, on account of his injuries, $15 per week for 13 weeks, aggregating $195; that it had paid medical, hospital, and drug bills to the amount of $230, and prayed that it be subrogated to the rights of appellee and recover whatever damages might be awarded him against the railway company, to the extent of $425. The Texas Utilities Company answered, alleging in substance that the railway company was not entitled to recover against it because, at the time of the injury, the Texas Utilities Company was a member of the Texas Employers' Insurance Association, under the Texas Employers' Liability Act. A trial to a jury resulted in a judgment in appellee's favor against the railway company, for the sum of $4,000 and interest, and in favor of the intervener, Utilities Indemnity Exchange, against the appellee in the sum of $425 and interest, and in favor of the Texas Utilities Company upon the cross-action of the railway company against it.

In response to the special issues submitted by the court, the jury found that the cover of the exhaust pit was not maintained in such manner as a person of ordinary care and prudence would have maintained it at the time of the accident; that said cover at that time was loose, which was unknown to the appellee at the time he stepped upon it; that the railway company was negligent in permitting the cover to be loose at that time; that a person of ordinary care and prudence would have stepped upon the cover in passing along; and that appellee has been damaged in the sum of $4,000.

In response to special issues requested by the Texas Utilities Company the jury found that said company was a subscriber under the Workmen's Compensation Act prior to and on the 12th day of August, 1920, and that the Utilities Indemnity Exchange was the insurer of the Texas Utilities Company under the Workmen's Compensation Act on said date; that the appellee had received from the Utilities Indemnity Exchange a

total of $195, weekly payments, and it had paid doctor's bills, drug bills, and hospital fees for appellee in the sum of $230.

In response to special issues submitted upon request of the appellee, the jury found that that portion of Pecan street in which the railway company had maintained its pumping plant and pit was habitually used by the public as a crossing and a passageway prior to and at the time of the injuries and that such use was known to the company.

In response to special issues requested by the railway company and submitted the jury found that the appellee was not guilty of contributory negligence in stepping upon the cover of the pit, and that his so doing did not proximately contribute to his damage; that at the time he stepped on the cover he was not exercising ordinary care for his own safety, but that his failure to do so did not contribute to his injuries; that at the time of the injury the citizens of Lubbock had abandoned that portion of the streets where the pumping plant and pit were located.

[1] The appellant contends that the findings are so conflicting that they will not support the judgment. This contention must be sustained, and requires the judgment be reversed and the cause remanded. A finding that a person of ordinary care and prudence would have stepped upon the cover clearly conflicts with the finding that when Hurst stepped on the cover he was not exercising ordinary care for his safety, and this last finding, under the facts, conflicts with the further finding that his failure to use ordinary care did not contribute to his injuries. There is a further conflict between the finding that that portion of Pecan street where the pump was located was habitually used by the public as a crossing and passageway and the finding that the citizens of Lubbock had abandoned that particular portion of the street.

[2, 3] The next contention to be considered arises under several propositions insisting that the court should have peremptorily instructed a verdict in appellant's favor, because it is shown that the plaintiff was a trespasser or a licensee, and that the railroad company owed him no duty other than to refrain from wantonly or willfully injuring him. This contention is based upon the assumption that the appellant was rightfully and lawfully maintaining its pumping plant at the intersection of Pecan and North Second streets. The issue as to whether the appellee Hurst was a trespasser, licensee, or invitee was not submitted to the jury. The blueprint map, made a part of the statement of facts, shows that the pumphouse is within the intersection of North Second and Pecan streets and that both the house and the pit are within that half of Pecan street upon which the Utilities Company's plant abuts. The general rule is that the owner of a lot abutting upon a street owns the fee to the center of the street. Cocke v. T. & N. O. Ry. Co., 46 Tex. Civ. App. 363, 103 S. W. 409; Id., 102 Tex. 580, 103 S. W. 407.

"The doctrine that the owner of the abutting property, although he owns no part of the fee of the street, has certain easements or incorporeal rights in the street which entitle him to the use thereof for all legitimate purposes, and that such easements or incorporeal rights are private property in a constitutional sense, of which he cannot be deprived without just compensation, has been developed in the judicial decisions of the last thirty years in a number of states." 3 Dillon, Municipal Corp. (5th Ed.) § 1245.

[4-9] Upon another trial, in the light of the rules just stated, it may appear from the evidence that the appellant company is a trespasser or a licensee in so far as the maintenance of the pit is concerned, dependent upon whether the utilities company owns the fee to the center of the street or whether, in the dedication of the street the owner of the property upon which the townsite was platted conveyed the fee of the streets to the city. If in the original dedication the owner of the property only granted to the city and the public an easement over the streets, then the fee to the center of the street passed when the owner of the townsite conveyed the abutting lot. Whether the appellant company is guilty of negligence per se in maintaining the pit at that place depends upon its right to use the street for that purpose. In the absence of legislative authority, a city has no power to alienate or otherwise absolutely dispose of its streets, but it must hold them in trust for the benefit of all the public. 13 R. C. L. p. 184, § 159. Except where authorized by the Legislature, either expressly or by necessary implication, the power conferred upon a municipality to grant certain rights in a street, does not authorize it to grant an exclusive privilege or franchise in the streets. 28 Cyc. 874. The general rule, under the common law, is that, without the consent of the city, properly given, no railway can construct even its line upon or across the streets and alleys of the city. 3 Dillon, supra, § 1226. The rule is recognized in this state by the enactment of V. S. C. S. art. 6497. Laager v. City of San Antonio (Tex. Civ. App.) 57 S. W. 61. A grant by a municipality of this character is always construed most strictly against the grantee, and in case of doubt must be construed in favor of the public (3 Dillon, 1233), and since the use by a railway of the streets of a city, even for its tracks, without the city's consent, is not usually regarded as a legitimate use, we think, in the light of this record, it may be inferred that the appellant is a trespasser or at most a licensee, maintaining a nuisance without authority. It is said in 3 Dillon, § 1234:

The use of a street by "ordinary steam or commercial railway is not usually regarded as a legitimate and proper street use, but the usual and ordinary powers of a municipal corporation to regulate and control the streets and to keep them free from obstructions are generally, though not universally, held to be sufficient to empower them to authorize the use thereof for the purpose of constructing and operating thereon a steam or commercial railway."

[10] The rule, however, is established in this state that municipalities may grant steam railways the right to construct their lines through the corporate limits of and across its streets and alleys. The same author further says (section 1241):

"A grant by statute or by a municipality under delegated authority, to a railroad or other corporation of a privilege upon a street or highway to enter, cross, or pass along it, with tracks and structures, is, in the absence of a clearly expressed intention to the contrary, a grant subject to the existing public right of use and is to be exercised in such manner as to interfere as little as possible with those for whose benefit the street or highway was originally laid out and opened. Hence authority conferred upon a municipality to grant the right to construct or to consent to the construction of any kind of railroad in a city street is limited in its scope to the grant of a right which permits the concurrent use of the street by the railroad and by the public, and the municipality has no power thereunder to confer upon a railroad the right to so occupy the street with its tracks as to destroy the street for purposes of travel and to exclude the public therefrom. It follows from these principles that the right of a steam or commercial railroad company, whose tracks are across a city street, is subject to the right of the municipality to apply the street to all proper street uses and to adapt it to public travel." Taylor v. Dunn, 80 Tex. 652, 16 S. W. 732; G., H. & S. A. Ry. v. Miller (Tex. Civ. App.) 93 S. W. 177.

[11, 12] It was held, prior to the enactment of article 854b, V. S. C. S., that a city council had no authority to close the intersection of two streets and give a railway company the exclusive use thereof. S. A. & A. P. Ry. Co. v. Bergsland, 12 Tex. Civ. App. 97, 34 S. W. 155; G., C. & S. F. Ry. Co. v. Garrett (Tex. Civ. App.) 99 S. W. 164. Although it appears that the pumping plant was constructed about ten years prior to the date of the accident, V. S. C. S. art. 5683, by express provision, would preclude the appellant railway company from acquiring title by limitation or prescription. San Antonio v. Rowley, 48 Tex. Civ. App. 376, 106 S. W. 753; Cocke v. T. & N. O. Ry. Co., 46 Tex. Civ. App. 363, 103 S. W. 409; Buchanan v. H. & T. C. Railway Co. (Tex. Civ. App.) 180 S. W. 625; Spencer v. Levy (Tex. Civ. App.) 173 S. W. 550; Holt v. Texas Midland Railway Co. (Tex. Civ. App.) 160 S. W. 327. According to the last-named case, a street may not be lost by abandonment because of nonuser by the public, and the act of the city in permitting a railroad to occupy a part of the street is ordinarily not sufficient of itself to show abandonment.

In view of some testimony in the record tending to show that the method in which the pumping plant and pit were operated and maintained it constituted a nuisance, we deem it proper to call the attention of the court and counsel to the following authorities bearing upon the right of a railway company to maintain a nuisance upon its right of way. M., K. &. T. Ry. Co. v. Mott, 98 Tex. 91, 81 S. W. 285, 70 L. R. A. 579; Moore & Savage v. Kopplin (Tex. Civ. App.) 135 S. W. 1033.

The appellant insists that the court erred in excluding city ordinance No. 16, which was passed by the city council on June 9, 1913. The ordinance book, No. 1, in which the ordinance was recorded, was offered in evidence. The caption of the ordinance, as shown by the bill of exception, is as follows:

"An ordinance giving the Pecos & Northern Texas Railway Company permission to use certain streets and alleys in the city of Lubbock, and authorizing them to close certain streets and alleys."

Omitting the formal parts, the ordinance is as follows:

"Article 1. That the Pecos & North Texas Railway Company has the consent and permission and by this order and ordinance it is hereby expressly given the assent and permission of the city council of the city of Lubbock, to build and construct along and upon the streets and alleys within said city of Lubbock, as shown by the red lines upon the blueprint hereto attached and marked Exhibit A, and expressly made a part of this ordinance.

"Art. 2. Be it further ordained by the city council of the city of Lubbock that all of the streets and alleys in the red lines on the blueprint hereto attached and marked Exhibit A and made a part hereof, and over and upon which the said Pecos & Northern Texas Railway Company may construct its road, be and the same are hereby vacated and closed to travel by the public and set apart and dedicated wholly to the use and occupancy of said road for said right of way purposes, save and except South First street," etc.

[13, 14] The original ordinance, with the blueprint referred to in it as Exhibit A, could not be found. Neither the blueprint nor any copy of it showing what property was included within the red lines thereon was made a part of the record. None of the witnesses introduced were able to testify that the portion of North Second and Pecan streets, upon which the pumping plant is situated, were included within the red lines of the blueprint. We think the ordinance, although it was incomplete, was admissible in connection with other testimony showing actual occupancy and claim of right to the

property under the rules of procedure recognized in this state for establishing the contents of lost instruments, as discussed by the Supreme Court in Magee et al. v. Paul, 110 Tex. 470, 221 S. W. 254. But it would not be admissible to establish a right by limitation or prescription, contrary to the provisions of V. S. C. S. art. 5683.

[15] There is no error in the judgment, in so far as the relative rights of appellant and the utilities company are concerned. We have made the foregoing general discussion of the law and citation of authorities, which may be applicable under the proper pleadings upon another trial. The principles of estoppel have no application as against appellee's cause of action. Rosenthal v. T., B. & H. Ry., 79 Tex. 325, 15 S. W. 268; G., H. & S. A. Ry. Co. v. Miller (Tex. Civ. App.) 93 S. W. 177.

Because the findings of the jury are conflicting and will not support the judgment, it is reversed, and the cause remanded.

Reversed and remanded.

KLETT, J., not sitting.