

# THE ATTORNEY GENERAL
## OF TEXAS

WAGGONER CARR
ATTORNEY GENERAL

AUSTIN 11, TEXAS

March 9, 1965

Honorable Fred P. Holub          Opinion No. C-398
County Attorney
Matagorda County                 Re: Whether accretion added to
Bay City, Texas                       the end of a dedicated
                                      street becomes a part of
                                      such street, and if so,
                                      whether the accreted portion
                                      of the street has been aban-
Dear Mr. Holub:                       doned under the stated facts.

Your letter recites dedication to the public of the streets of the Original Townsite of Matagorda as a result of the filing of the plat of said town for record some years ago. The town being unincorporated, the streets thereof are maintained by the county. Some lots fronted on the bay and certain streets of the city ran up to the bay. Thereafter, through accretion, the land advanced three or four miles so that the streets are capable of being extended this distance to the present line of the bay. However, the Intracoastal Canal separates the original dedicated portion of said streets from the accreted portion.

The digging of said canal has resulted in a barrier to the extension of such streets. The county has never maintained such extended streets, nor have they been used by the public.

You request our opinion as to what rights the county has in the extended streets, your letter pointing out that this requires a determination, first, of whether the extensions onto the accreted area are a part of the dedicated streets, and second, whether the streets in the accreted area have been abandoned.

As to the effect of accretions, it is well settled that natural accretions belong to the riparian landowner. State v. Balli, 144 Tex. 195, 190 S.W.2d 71 (1944). And see Luttes v. State, 159 Tex. 500, 324 S.W.2d 167 (1958). However, in this case, the riparian land is a dedicated street, over which, by virtue of the recording of the townsite plat, the public has an easement. 21 T.J.2d 149, Easements, Sec. 24.

In Gibson v. Carroll, 180 S.W. 630 (1915), the court said that a plat setting aside city streets is an irrevocable conveyance, and that "when he recorded his map showing a street at a place where he had the right to acquire land formed by accretions, . . . he conveyed to the public those rights and such others as he had."

In Curry v. Port Lavaca Channel and Dock Company, 25 S.W.2d 987 (1930), the map showed Water Street running along the bayshore. The court said:

"Thus, same cuts off all lots or subdivisions from the bay, and destroyed all riparian rights."

In both cases, the quoted language is admittedly, dictum. We have found no other Texas cases on the question.

In point is Horgan v. Town Council of Jamestown, 80 Atl. 271 (R.I., 1911). A street ran across the town to the sea. The claimant built a bulkhead and filled in an area between the end of the street and the sea. He then built a stone wall blocking access from the street to the sea. The court said:

"The way having been dedicated to the public, the public right in said way is not lost by nonuser or by adverse possession, however long continued (citing cases). This right of access to navigable water dedicated to the public, and not lost by mere nonuser, will attach itself to any extension of the upland at the end of said highway whether such is an accretion arising from natural causes depositing soil at the end of the highway, or was caused by human activity, either rightly or wrongfully exerted. . . . That all accretions to a public highway terminating at a navigable water attach to and form part of the highway is amply supported by authority."

In The Schools v. Risley, 77 U.S. 91 (1869), a street ran along the banks of the Mississippi River. Six or seven hundred feet of alluvion was formed next to the original bank and a new street was established on the accreted bank. The court upheld the following instruction:

> "That if the jury believe . . . that
> a street . . . was permanently established,
> for the public use . . . the owner or owners
> of that block were not riparian proprietors
> of the land between that block and the river."

In New Orleans v. United States, 10 Peters 662 (1836), an ancient map of the New Orleans area showed a vacant space along the banks of the river, designated on the map as a "quay." This was a public common. The court said:

> "It appears that this quay has been
> greatly enlarged, by the alluvial forma-
> tions of the Mississippi River. . . .
> If the dedication of this ground to public
> use be established by the principles of
> common law, is it not of the highest impor-
> tance that the accumulations of the vacant
> space, by alluvial formations, should par-
> take of the same character, and be subject
> to the same use as the spoil to which it
> becomes united? . . . If the city can claim
> the original dedication to the river, it has
> all the rights and privileges of a riparian
> proprietor. . . . This enlargement of the
> quay cannot defeat or impair the rights of
> the city. . . ." To the same effect see
> Barney v. Keokuk, 94 U.S. 324 (1876).

From the foregoing authorities, and assuming that the three or four miles extension was naturally caused by accretion independent of the hand of man, we conclude that as the land accreted at the end of the streets in question, the streets continued to advance with the accretion to the new line of the bay. We are assuming that the Intracoastal Canal was cut through the accreted area. Of course, if the accreted area was actually an island arising from the bed of the sea, as distinguished from an accretion to the mainland, it would belong to the State. Giles v. Basore, 154 Tex. 366, 278 S.W.2d 830, 835 (1955).

We emphasize in rendering this opinion that we have relied strictly on the facts as stated in your request and as restated in this opinion. We have made no independent investigation regarding the area of land in question, its creation, progression, method of progression or cause for its growth.

Incidentally, we point out that public roads belong to the State, and not to the county. Robbins v. Limestone County, 114 Tex. 345, 268 S.W. 915 (1925). The court, however, stated that the county is "authorized and charged with construction and maintenance of the public roads within its boundaries." See also State v. Hale, 136 Tex. 29, 146 S.W.2d 731, 736 (1941); 28 Tex.Jur.2d 165, Highways and Streets, Sec. 135.

A title or easement for street purposes may not be lost by adverse possession. Article 5517, Vernon's Civil Statutes. See also G. H. & S. A. Ry. Co. v. City of Eagle Pass, 249 S.W. 268, rev'd o.g., 260 S.W. 841 (1923).

Authority for closing roads by the county is found in Articles 2351, 6703, 6703a and 6705, Vernon's Civil Statutes. Also see Article 6673a, Vernon's Civil Statutes, authorizing the State Highway Department to make conveyances of public roads. And see Article 6674q-9, Vernon's Civil Statutes, authorizing the abandonment of public roads, but the method of making the abandonment is not defined. We assume from your letter that there has been no formal abandonment of the road by the county.

At the outset, we note that the forfeiture of easements is not favored by the courts (28 C.J.S. 716, Easements, Sec. 52), and that the burden is on the person asserting abandonment to prove it (39 C.J.S. 1066, Highways, Sec. 130; McQuillin on Municipal Corporations, 3rd Ed., Sec. 30.208, vol. 11, p. 171).

As reflecting the possibility of abandonment, your letter points out what appears to have been long delay in opening the streets, the nonuser thereof by the public and the difficulties of access occasioned by the dredging of the Intracoastal Canal.

It appears to be well settled that mere nonuser by the public, including long delay in opening the streets, will not, standing alone, establish abandonment. City of LaGrange v. Brown, 161 S.W. 8, (1913, error ref.); Adams v. Rowles, 149 Tex. 52, 228 S.W.2d 849, 852 (1950); Holt v. Texas Midland R.R. Co., 160 S.W. 327, (1913); Panhandle, etc. Ry. Co. v. Hurst, 251 S.W. 538, (1923); 25 Am.Jur. 411; 39 C.J.S. 1069; 64 C.J.S. 54.

As to whether the existence of the canal, with the resulting difficulty of access to the extended streets, results in an abandonment, requires an application of the rule first announced in this State in the case of Griffith v. Allison, 128 Tex. 86, 96 S.W.2d 74, 77 (1936). There, the court held that abandonment of an easement "occurs when the use for which property is dedicated becomes impossible, or so highly improbable as to be practically impossible, or where the object of the use for which the property is dedicated wholly fails."

In Dallas County v. Miller, 140 Tex. 242, 166 S.W.2d 922 (1942), the Supreme Court appears to announce a slightly different rule when it refers to the "universally recognized rule that, while abandonment may be established, like any other facts, by circumstances, yet those circumstances must disclose some definite act showing an intention to abandon and terminate the right possessed by the easement owner. The material question is the intention to abandon and that intention must be established by clear and satisfactory evidence. A mere nonuser of an easement will not extinguish it." Perry v. City of Gainesville, 267 S.W.2d 270, 274, (1954), follows this rule.

In a still later case, the Supreme Court in Adams v. Rowles, 149 Tex. 52, 228 S.W.2d 849 (1950), cited the Miller case, supra, but only for the proposition that nonuser will not extinguish an easement. For the general rule, it returned to the rule of the Griffith case, supra, of finding abandonment if the dedicated use is "impossible or so highly improbable as to be practically impossible", or if the object of the dedicated use has wholly failed. This rule was again recognized by the Supreme Court in Magee Heirs v. Slack, 152 Tex. 427, 258 S.W.2d 797 (1953) and in Zachry v. City of San Antonio, 157 Tex. 551, 305 S.W.2d 558 (1957), wherein the court in a park case stated:

> "To constitute an abandonment of dedicated property use for which property was dedicated must become impossible of execution or the object of the use must wholly fail."

It will be noted that in this language, the court makes no distinction between "impossible" and "practically impossible."

In seeking to apply the rule as thus announced, we note the statement in your letter:

> "In this case, the Intracoastal Canal
> has hindered the use of the street added
> by accretion and up to now has made it im-
> practical to maintain, but to say that it
> is impossible or improbable in this day of
> modern machine and growing population would
> not be correct."

We agree. While the existence of the canal does pose an inconvenience, the use of ferries and bridges, including draw bridges, is common place in the establishment of streets and highways. Further, we find nothing in the existence of the canal to indicate that the object of the street dedication has wholly failed.

It follows from what we have said that under the authorities cited, we are of the opinion that the facts as stated by you are not sufficient to establish an abandonment. This holding, however, is limited to the facts as stated by you. A very excellent and exhaustive review of the authorities is found in 171 A.L.R. 87. At page 132 it is stated that whether there is an estoppel on the part of municipal authorities to deny an abandonment "depends largely upon the combined effect of the circumstances presented in the individual case."

For example, in Magee Heirs v. Slack, supra, the court held that where a "dream city" collapsed and was never developed, the object of the dedicated use of the streets had wholly failed, and hence there was abandonment.

In Plunkett v. Young, 375 S.W.2d 776 (error ref., n.r.e., 1964), a portion of the road was under water and a jury finding of abandonment was upheld as not being against the great weight of the evidence.

For other general discussions of the problem, see McQuillin on Municipal Corporations, 3rd Ed., Sec. 30.182, vol. 11, p. 100, et seq., and Elliott on Roads and Streets, 4th Ed., Sec. 1172, vol. 2, p. 1668, et seq.

Assuming that there are no additional facts evidencing abandonment other than as outlined in your letter, we are of the opinion that the failure to open such streets on the bayward side of the canal, the nonuser of such streets by the

public and the existence of such canal, do not render the usage of such properties for street purposes "impossible of execution", and therefore there has been no abandonment. Under such circumstances, as pointed out in Robbins v. Limestone County, supra, the county is authorized to construct and maintain such extended streets.

## SUMMARY

The bay in front of the unincorporated Town of Matagorda has receded as much as three or four miles as a result of accretion. Streets running to the bay were dedicated to the public in the recorded plat or the Original Townsite of Matagorda. As the accreted land advanced the dedicated streets were therby extended so as always to reach the bay. The Intracoastal Canal now separates the original streets from the accreted area. Such streets bayward of said canal have never been opened by the county, and the public has never used same. The facts aforesaid do not establish an abandonment of the extended streets. Therefore, under the facts stated, the county is authorized to construct and maintain same.

Yours very truly,

WAGGONER CARR
Attorney General of Texas

By: J. Arthur Sandlin
J. Arthur Sandlin
Assistant Attorney General

JAS:ms

APPROVED:
OPINION COMMITTEE

W. V. Geppert, Chairman
Milton Richardson
Ben Harrison
Malcolm L. Quick
Jerry Brock
George Black

APPROVED FOR THE ATTORNEY GENERAL
By:  Stanton Stone